Mr. Justice Bay
delivered the opinion of the court:
THIS was a case of murder, tried b.efore me in October last. The indictment contained two counts ; one for murder, the other for manslaughter. The evidence against the prisoner was very clear and conclusive, and may be comprised within a very narrow compass. It appeared that two of the prisoner’s negroes had run away, and Jacob particularly had been absent for some considerable length of time ; that upon getting some information of them, he went in pursuit of them, and caught them some where about Wappoo Creek; that upon getting them into his possession, he caused their hands to be tied behind their backs, and then tied the two together, and ordered *484 them into a boat or canoe to bring them over to Charleston, and made them sit down in the bottom of it, while he sat in the stern with a loaded double barrelled gun beside him. That in the afternoon of the 7th clay of June, 1821, as the boat approached the shore or landing, near the end of Beaufain-street, the prisoner, when about 100 yard s-from the shore, took up his gun and deliberately took aim at Jacob, saying, “ damn you, you shall never kill any more hogs,” and fired off one of the barrels at him. But as the negro satin the bottom oi the boat, with his knee up in a line with his body, the contents of the gun struck his knee instead of entering his body. As soon as the boat reached the flood-gate or place of landing, Mr. Robert Home., who was standing on the shore, looking at the boat as it approached, and who saw the flash and heard the report of tire gun, went with several others up to the boat, and there they found the prisoner with the gun in his hand, and the negro laying on his back in the bottom of the boat, bleeding from the wound. Mr. Home, who was a principal witness for the prosecution, and who appears to have had great merit in carrying on this prosecution, in the cause of humanity, asked the prisoner if he had shot the negro, who answered in the negative, and said the gun had not been fired for a year. The witness, Mr. Hume, then demanded the gun from him, in order to see whether it had been discharged or not. But he refused to give it up. Mr. Hume, however, went to the boat, and forcibly took the gun from him'. As soon as he obtained possession of the gun, he observed the cock of one of the locks down, and the pan open, and found that it had just been fired off. Upon trial, he found the other barrel loaded and primed. The defendant was very abusive, when the gun was taken'from him. Mr. Hume had the wounded negro taken up to the house of Dr. Glover, who lived in the neighborhood, to have the wound dressed ; while the prisoner, who was opposed to it, continued to be very abusive. Dr. Glover then dressed the wound, after which, the negro was sent to the worlf. *485 house to be taken care of by the surgeon of the establishment, Dr. Logan. This testimony of Mr. Hume was corroborated by Wm. Van Velcy, another witness, who was near Mr Hume, when the boat approached the landing, and when the gun was fired, and went up to Dr. Glover’ s where the negro’s wound was dressed, and saw him sent off to the work-house. Drs. Glover and Logan were both sworn as witnesses, who both attended the wounded negro carefully till the first of August following, when he died, and they were both clearly of opinion, that the wound in the knee was the occasion of his death. This is the sum and substance of the testimony given against, the prisoner. '
After the evidence for the state was closed, Mr. Simons, who was counsel for the prisoner, took several exceptions in bar of the prosecution:
1st. The first exception was, that this indictment was for the recovery of a penalty of ¿2 700 currency, incurred under the negro act, and that the present prosecution was not commenced within six months after the penalty accrued, consequently that the cause of prosecution was for ever lost. \
. In order to support the first part of this exception, that this was a prosecution for the-recovery of a penalty or forfeiture, he relied upon the 37th clause of the act of 1740, commonly called the negro act, which declares that every person who shall murder his own slave, or the slave of any other person, shall forfeit and pay a fine of ¿2 700, current money. Here he observed was a forfeiture incurred by this act, which must be recovered according to the act of limitation of 1712, or agreeably to the act of 1748, for recovering fines or forfeitures ; both of which acts limit the time for commencing prosecutions for penalties and forfeitures to six months next after the penalties incurred. And in order to support the second branch of this objection,' “ that this prosecution was not commenced within six months after the penalty incurred,” he stated, and it was not denied by the Attorney-General, that at a preced *486 ing term, the prisoner had been indicted for this offence by the name of Wm. M. Taylorv and that a plea of misnomer liad been pleaded and sustained, on the ground, that his name was Wm. IT. Taylor. la consequence of which that indictment, was quashed, and that the present indictment was not found until after the expiration of six months from the time the penalty was incurred, and therefore it was contended that the cause of action or prosecution was barred, and that the present indictment ought, in like manner, t.o be quashed.
After hearing the Attorney-General in reply, I was of opinion, and so decided, that this was not a prosecution for a penalty or forfeiture, but for murder, the highest of-fence which an individual can commit against his fellow man, as would appear by ihe clause of the act under which the prisoner was indicted, and the indictment framed under it. The clause oftheactis in the words following : “ And whereas, cruelty is not only highly unbecoming Christians, hut is odious in the eyes of all men who have any sense of virtue or humanity ; therefore to restrain and prevent barbarity from being exercised towards slaves : Be it enacted, that any person or persons whosoever shall wilfully murder his own slave, or the slave of any other person, every such person shall, upon conviction thereof, forfeit and pay the sum of £700 current money, and shall be rendered, and is hereby declared altogether and forever incapable of holding and enjoying any place of profit or trust, civil and military, within the province.” “And in case such person shall not be able to jiay the penalty and forfeiture hereby inflicted and imposed, every such person shall be sent to any frontier town or garrisons of this province*', or committed to the work house in Charleston, there to remaiu for the space of seven years, and to serve, or to be kept at hard labor.”
Now it is very evident from the perusal of this clause of *487 ihe act, +hnt. the offence of murder was the one contemplated by rhis clause of the act, a net the one intended to be punished by it; although the forfeiture of .£700 currency, is mentioned as one of the consequences of a conviction for this heinous offence, like forfeitujc of goods and chatiels in England, upon, a conviction for felony. By the common law, no sum is mentioned ; all the goods and chattels are forfeited which belonged to the fe-'on at the time of his conviction, morí, or less. By this clause, 1 he amount of the forfeiture is specifically mentioned, and this constitutes the difference between the two casts ; but in neither of the cases is the forfeiture the main object of the prosecution ; they are only the consequences springing out of, or resulting from the conviction of the more aggravated of-fence of murder or other felony. But under this clause of the act under consideration, this forfeiture is ordy a part of the punishment contemplated by it, fora lasting and perpetual disfranchisement or prohibition from all offices or places of trust, civil and military, is for ever declared against the prisoner ; and in case of disability to pay down this £ 700 forfeiture, the prisoner is to be committed and to be kept at hard labor for the space of seven years.
And as to the indictment under this clause of the act, the Attorney General has closely pursued the end and object of the act by inserting in it two counts ; one for murder and the other for manslaughter, the usual and customary counts in all cases for murder ; there is nothing said about fines and forfeitures in it. And for this offence of murder, it is well known that the policy of our law has fixed no time for commencing prosecutions for this crime. The common law has wisely left it open, to be governed by times and circumstances whenever the offender can be apprehended and witnesses procured against him. No act ever passed in England for that purpose ; none ever existed in this country to limit the time in such cases. The case of the late governor Wall in that country, who was tried, convicted and executed for the offence of murder a few years ago, more than twenty years after the offence *488 was committed, is a remarkable illustration of the common law principles upon this subject, and shows that there is no limitation of time for such prosecutions; and the law is the same in this country. In regard to the acts of limitations quoted, to wit, that of 1712, and 1748, they have-no bearing or allusion to any case of murder or other felony whatever. The eleventh druse of the act of 1712, enacts, “that all penalties and forfeitures under any act or statute for the suing of which, by civil process, by action of debt, plaint or information, no time is mentioned, that the same shall be prosecuted within six mouths after the cause of action or suit given, and not after.” This clause, therefore, has no relation to 1 he commencement of prosecutions for felonies or other high crimes or misdemeanors; it relates entirely to penalties which may be recovered by civil actions or qui tarn suits. The other act of 1748, relied on by the prisoner’s counsel, limiting the time for commencement of prosecutions, for recovery of penalties and forfeitures, where no time is limited for recovery of the same, had no other object in view but the recovery of such penalties. The title of the act relates to prosecutions for recovery of penalties and forfeitures, and the enacting clause pursues the same idea, and declares that in every case where, any line or penalty or forfeiture hath been inflicted, “ no information, action, or prosecution shall be commenced or carried on against the offender, for and in respect to such fine, penalty, or forfeiture, unless within six months.” So that it is clear that the title of this act and the enacting clause exactly correspond with each other in the end and object of the act, for recovery of fines and forfeitures, and has not the most distant allusion to the foul crime of murder or other felony whatever, but only relates to pecuniary matters. I therefore overruled both exceptions.
2ndly. Another ground was taken also by the prisoner’s counsel, that a former indictment had been given out against the prisoner, which was quashed, and there had been no regular continuances between the-former and pre *489 Sent indictment, and a great, number of authorities were read to show that in order to take a case out of the statute, regular continuances from the commencement of a prosecution to its conclusion ought to be kept up or entered* That the present indictment was not found until long after the forfeiture incurred, and after the first indictment was quashed, and long after the six months liad expired, ’without any regular continuances whatever.
The Attorney General admitted that in civilactions or in Suits for recovery of pecuniary fines and penalties, they must be commenced in time, or that there must be regular continuances, to take a case out of the statute. Not so in ■cases of murder, or other heinous offences. In -these latter cases, if an indictment be faulty or quashed for any mistake or irregularity, an indictment de novo may be given out against the prisoner at any time, or if the offence prove to be of a higher nature than laid in a prior indictment, another may be given out so as best to answe'r the ends of public justice. But the court will always take eare that aman be not twice tried for the same offence. He also contended that the time of commencing a prosecution for a criminal offence; was to be considered from the time the information was ‘given to the magistrate of the origin and nature of the offence, and not from the finding of a bill by a grand jury, and that was within the six months, if it had been necessary to have commenced this prosecution within this time, which, however, he denied, as has been already mentioned, and often determined. After hearing arguments for and against this second objection, I overruled it, upon the grounds mentioned by the Attorney-General in reply to the prisoner’s counsel, and on the authority of 3 Williams, 499. Foster’s Crown Law, 104. 1 Viners Supplement, Jlb.p. 2. In all which cases, it is laid down as settled law, that if an indictment be given out and found for murder or other felony, which is defective or faulty, another may be given out, so as to reach the justice of the case; but that the court will always take éare that a man be not twice tried for the same offence.
*490 3rdly; After this, another objection was taken, namely, that the act of 1740, had been repealed by the act of 1821, consequently, that no indictment could be maintained upon it.
In order to support this objection, Mr. Simons argued that every affirmative statute repealed a former affirmative one by implication, if contrary thereto, and produced several authorities to support that position. (1 Black. 89. 6 Bac. 373. 1 Hale, P. C. 297, fyc.) That the act of 1821, makes the killing of a negro murder, and inflicts the penalty of death without the benefit of clergy. This act repeals the former act of 1740, by implication, which made this offence only a high misdemeanor. He then mentioned the act against horse-stealing, which made that offence felony without benefit of clergy, which had Only been considered as a high misdemeanor before ; in consequence, all the prosecutions in the country then depending for that offence, fell to the ground ; for when a statute is repealed, the court has no longer jurisdiction of cases under it, unless there is some saving clause for the purpose of punishing the offence under the former existing law, (6 Bac. 372. 1 Hale, 290-1, 708. Hawk. 202. 4 Dal. 373. 1 Cranch, 110. 5 Do. 281.y
The Attorney-General in repty to this last objection observed, that the Legislature never could have intended or designed that murder should go unpunished one way or other, which would really follow as.a natural consequence, if the construction contended for was to prevail; for the offence charged in the present indictment was committed., before-the act of 1821 was. passed, consequently this latter act could not reach the offence; but the fact he contended really was, that this latter act did not repeal the act of 1740, either expressly or impliedly;. he said he was free to admit all the cases quoted by the gentleman against him. of affirmative statutes repealing prior affirmative ones wherever there was a repugnancy or contradiction; but iffthe present instance, he insisted there was no such, contrariety or repugnancy. The act of 1821 does *491 .not repeal the act of 1740, as to all murders committed before the day of passing that act. It is prospective in its operation, and has no reference in it to the act of 1740, or any offence under it prior to December, 1821, when it was enacted. It leaves all those offences where it found them, to be punished by the prior existing law. He then quoted Coles case, where the court determined that the fines incurred under the old patrol act might he enforced and collected under it, notwithstanding the new patrol law which fixes higher fines in future cases, as there was no inconsistency in the two acts.
After hearing the arguments upon this last objection, I was of opinion that the act of 1821, did not repeal the old act of 1740, but came in aid of it, and might well be Considered as an amendment of it rather than a repeal; and this I think will appear obviously clear and certain, by a brief review of it. The title of this last act of 1821, is “ An actio increase the punishment inflicted on persons convicted of murdering any slave, and for other purposes therein mentioned.55 The enacting part then goes on -and declares, “ that if any person from and after the passing of this act shall wilfully, maliciously, and deliberately murder any slave within this state, such person shall, on conviction, suffer death without benefit of clergy.’5 Nothing then can he clearer to my view of the subject than that this act was prospective in its operation, extending only to cases happening after the passing of the act, and cannot by any possibility be construed to extend to cases coming under the purview of the old law of 1740. It has no relation to this old act, nor is there any thing in it repugnant to, or inconsistent with it; they both relate to the punishment of the heinous offence of murder, although they differ in the degree of punishment for the same crime. The old law punishes the offence with fine, disqualification from office and places of trust, and seven years imprisonment at hard labor. The last law punishes the same offence, upon conviction, with death, without benefit of clergy. The two acts are entirely independent *492 of each other, and steer clear of each other without collision, as to all cases before the year 1821. The act against horse-stealing, which was quoted by the prisoner’s counsel, and so much relied upon, contained an express clause repealing all former acts by name and description, which had ever passed in this state against that offence ; so that they were all expunged from the statute hook. But the. act of 1789, then passed, which made that offence felony, without clergy ; and therefore it was, that all the prosecutions for that offence fell to the ground ; because, after the passing of the act of 1789, there was no existing law to punish the offence in the intermediate time between the commission of the offence and the passing of the new law. Not so in the present case ; there is no express repeal of tire old law of 1740 ; it remained in full force to punish all offences against it, till the act of 1821 was passed into a law, which is prospective in its operation. Coles case, .quoted by the Attorney-General, has, in my opinion, settled the law in this state. There, the fines and penalties which had been incurred under the old patrol law of 1746, were permitted to be recovered under it, notwithstanding there was a clause in the new patrol act of 1819, repealing all former acts repugnant thereto; because the clause in the new patrol act did not prevent the recovery of the fines under the old act nor did they consider such recovery as repugnant to the terms of the new law. So, in like manner, I am of opinion that the punishment of an offender, under the old act of 1740, for murder, is not repugnant or inconsistent with the act of 1821, and that it would in this case be a denial of justice to refuse to let the case go to a jury of a country upon its merits. The cause then went to the jury upon the evidence offered in support of the prosecution, and the jury, without the smallest hesitation, found a general verdict'of guilty, which convicted the prisoner of the offence of murder. A motion for a new trial and in arrest of judgment was then made, and the cause has been brought up to this court, where all the foregoing legal points have been fully dis- *493 ’ ¿ussed and investigated over again, and the court, after mature deliberation, are of opinion that all the legal exceptions taken on the trial in the Circuit Court below, were correctly overruled upon principles of law, and that the present motion should be dismissed.

 At that time, in the year 1740, there were garrisons kept up in the frontier of South-Carolina against the Indians.,